UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
Gainesville Division

FLORIDA FIRE CHIEF'S ASSOCIATION         Case No.:
INC., a Florida Corporation,

     Plaintiff,

vs.

TRUIST BANK, and JOHN
DOE(s),

     Defendant.

_____/

## **COMPLAINT**

Plaintiff, FLORIDA FIRE CHIEF'S ASSOCIATION, INC. ("FFCA" or "Plaintiff"), a Florida corporation, by and through undersigned counsel, hereby sues Defendants, TRUIST BANK ("TRUIST" or "Defendant"), a foreign for-profit corporation, and JOHN DOE(s) ("FRAUDSTER(S)") (together "Defendants"), as follows:

## INTRODUCTION

1.     This action for damages arises from a series of unauthorized funds transfers initiated by FRAUDSTER(S) in a scheme to defraud whereby



stolen confidential information was used to access Plaintiff's business bank account thirty-nine (39) times.  Plaintiff's business bank account was used to originate transfer orders distributing Plaintiff's money to unknown payees at various banks and a TRUIST account opened by FRAUDSTER(S) in the name of a nonexistent entity for the sole purpose of receiving the stolen funds. TRUIST'S actions and inactions before and after the thefts occurred aided and abetted FRAUDSTER(S) in their efforts and helped them abscond with $1,013,246.93 in unrecovered stolen funds.

## JURISDICTION AND VENUE

2.     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 because this is a civil action arising under federal law. This Court's jurisdiction also exists under 28 U.S.C. § 1332 as the Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interest and costs.

3.     TRUIST is subject to the jurisdiction of this Court as TRUIST regularly transacts business in this District, and the events described herein occurred in part in this District.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred in this District, and because TRUIST has numerous operations and branches throughout this District, wherein it regularly transacts business.

PARTIES

5.      Plaintiff FFCA is a professional membership association comprised of career and volunteer fire departments existing under the laws of the State of Florida with headquarters in Tallahassee, Florida. The FFCA was established in 1958 to support the professional, educational, and legislative needs of Florida's fire services community.

6.      Defendant TRUIST is a foreign for-profit corporation formed by a December 2019 merger of BB&T (Branch Banking and Truist Company) and SunTrust Bank existing under the laws of the state of North Carolina (FDIC #9846) with headquarters in Charlotte, North Carolina. TRUIST has branches in this and many other counties and districts throughout Florida, as well as a mobile app and online banking.

7.      At all times during the events that are the basis of this Complaint, FFCA was a customer of TRUIST and conducted their banking

activities most often online and at multiple TRUIST locations in the Tallahassee, Florida area, including a branch located at 3522 Thomasville Road, Tallahassee, FL 32309.

8.     Defendant(s) FRAUDSTER(s), sued as JOHN DOE(s) pursuant to Federal Rule of Civil Procedure 15(c) and Florida Statute § 49.021, are person(s) or entities whose identities are unknown to FFCA, responsible for opening phony TRUIST accounts and using stolen confidential information to defraud Plaintiff and misappropriate Plaintiff's funds. FFCA will seek leave of Court to substitute their true names when the FRAUDSTER(S) identities become known.

SUBSTANTIVE ALLEGATIONS

*Plaintiff's Regular Banking Practices*

9.     FFCA has been banking with SunTrust Bank n/k/a Truist Bank for years, maintaining multiple accounts including the compromised business account ending in 6633 (the "Account"), opened in approximately 2000 when it was known as Sun Bank, which became SunTrust Bank, which merged with BT&T and then the bank now known as Truist Bank.



10.    Plaintiff used the Account primarily for six (6) accounts in total, including:   payroll and employee benefits (FFCA); scholarships (Foundation 501(c)(3)); Fallen Firefighter Memorial expenses (Foundation 501(c)(3)); money market account (FFCA/Foundation Reserves); monthly general operating expenses (FFCA/Foundation); annual contract(s) and service agreement(s); and Florida Joint Council of Emergency Services.

11.    The FFCA primarily used checks for banking transactions with less than ten (10) ACH transactions per month.  All financial transactions were handled by the FFCA accountant with the exception of the ACH transactions which were handled by the Office Manager. Regular reoccurring transactions had certain repeated characteristics: payroll was bi-weekly, monthly general business expenses, and annually for contracts and service agreements.  The ACH transactions were always initiated from one of the computers housed at FFCA's offices in Tallahassee, Florida; they originated from a single static Internet Protocol ("IP") address; and they were accompanied by weekly or monthly withdrawals for federal and state tax withholding as well as 401(k) contributions.

12.     The highest payment FFCA ever made from the Account was a wire transfer in the amount of $178,000.00 for the purchase of the FFCA Tallahassee office in 2017.

13.     In addition, FFCA used the Account to transfer funds to and from the accounts of FFCA and related entities.

14.     FFCA would also transfer from SunTrust/ Truist Bank to the SunTrust/ Truist Bank credit card account approximately $20,000.00 to $70,000.00 monthly to pay FFCA's credit card balance.  The transfers were made by staff and/or FFCA's accountant.

*Cyber Attacks*

15.     On August 4, 2022, Plaintiff's employee was unable to login to TRUIST'S website when antivirus software detected and blocked an unwanted application from downloading onto her computer. An IT professional conducted an onsite inspection and sweep of the computer and confirmed that an attempted download had not been completed and no malware was installed. He then helped Plaintiff's employee access the bank's website.

16.    On September 24, 2022, Plaintiff's cybersecurity detected malware on the same computer, which was promptly removed by an IT professional who recommended and assisted Plaintiff in implementing additional security measures.

*Fraudulent Transfers*

17.    Beginning on September 30, 2022, a series of thirty-nine (39) atypical unauthorized funds transfers were made out Plaintiff's Account over the course of twenty-five (25) days. A properly redacted detail of the unauthorized transfers is attached as **Exhibit A**.

18.    On September 30, 2022, the first unauthorized wire transfer in the amount of $85,010.00 was made from the Account. Three (3) days later, a second unauthorized wire transfer in the amount of $69,102.19 occurred. In both instances the funds were directed to unusual payees unknown to Plaintiff that had not previously received a funds transfer from the Account.

19.    From October 5 to October 20, 2022, thirty-seven (37) unauthorized ACH transfers of unusual amounts were pulled from the Account, some of which were batched. All of the ACH transfers were sent to different payees at various banks, none of whom had previously received

a funds transfer from Plaintiff, and five (5) of them totaling $279,068.00 were *approved* and *received* by TRUIST.

20.     The five (5) fraudulent ACH transfers *approved* and *received* by TRUIST were directed to an account ending in 9694, opened in the name of a nonexistent entity identified as Finding Happy Daily, LLC (the "Fake Account"), and were sent as follows:

   a.  ACH wire transfer dated October 7, 2022, in the amount of $63,010.00.

   b.  ACH wire transfer dated October 12, 2022, in the amount of $8,915.00.

   c.  ACH wire transfer dated October 14, 2022, in the amount of $73,012.00.

   d.  ACH wire transfer dated October 18, 2022, in the amount of $76,831.00.

   e.  ACH wire transfer dated October 20, 2022, in the amount of $57,300.00.

21.    Plaintiff was not involved in the execution of any of the thirty-nine (39) fraudulent unauthorized funds transfers and received no notice that the transfers had occurred.

22.    TRUIST failed to implement or follow proper security procedures designed to verify that the identity of the person originating the electronic transmission is in fact the person who is authorized to make the transfer from the account.

23.    TRUIST was negligent and reckless in allowing FRAUDSTER(S) to open the Fake Account that was used for the sole purpose of receiving stolen funds.

*Plaintiff Reported Fraud To Truist*

24.    On October 20, 2022, Plaintiff called the Truist Fraud Department initiating claim #C202210201795. During the call, TRUIST advised Plaintiff for the first time of "multiple suspicious ACH transactions" flagged on the Account visible only to TRUIST.

25.    TRUIST reviewed the list of "suspicious transactions" with Plaintiff verbally over the phone, and Plaintiff verbally confirmed that all of the transactions were indeed fraudulent. TRUIST also questioned Plaintiff

about account access and notifications during the call and locked the compromised Account with instructions to Plaintiff's executive director, who was on the call, to go to his local branch (located in Jacksonville) and sign an affidavit provided by the bank.

26.     Immediately upon the conclusion of the call, Plaintiff's executive director went to the bank as instructed and met with a representative named Nique Pittman. Ms. Pittman did not have an affidavit for Plaintiff to sign and was clearly uninformed and untrained as to what she needed to do.

27.     Ms. Pittman began placing multiple calls to numerous people looking for guidance. She was placed on hold numerous times, as all of her calls were transferred over and over, before she finally reached Katherine Lancaster in the Centralized Fraud Department who provided the ACH Written Statement of Unauthorized/Improper Activity form for Plaintiff's execution and suggested that Plaintiff contact the Account Manager.

28.     Plaintiff's executive director executed the form as directed, handed it back to Ms. Pittman who emailed it to someone presumed to be Ms. Lancaster. Plaintiff's executive director then called the Account



Manager, Susan Stokes, who conferenced in Onetha Jones, Vice President Business Connect Navigator II.

29.     During the conference call with Ms. Stokes and Ms. Jones, the two bank representatives locked all of Plaintiff's existing accounts and started the process of opening a new account for Plaintiff's incoming funds. When Plaintiff began asking about options for handling payroll and other essential operating costs, Ms. Jones said she would get the "higher ups" involved but there was no follow through on TRUIST'S part.

30.     Plaintiff made several requests for a copy of TRUIST'S list of suspicious transactions, but TRUIST failed to provide it for several days and finally provided it on October 26, 2022.

31.     The list of transactions that was previously visible only to TRUIST revealed an obvious unusual pattern of wire transfers and odd recipients, none of whom were employees, vendors, or affiliates of Plaintiff.

32.     Because the transactions were unusual in nature, each and every one of them had been flagged as suspicious by TRUIST'S security system; yet TRUIST allowed the fraudulent transfers to continue unaddressed for nearly a month before stopping them.

33.     Over twenty-five (25) days, TRUIST originated and processed thirty-nine (39) atypical unauthorized fraudulent transfers from the Account totaling **$1,140,289.19**, including the five (5) transfers totaling $279,068.00 that TRUIST also *accepted* and *received*.

34.     To date TRUIST has made one (1) repayment to Plaintiff in the amount of $57,300.00.

35.     To date Plaintiff has recovered **$127,042.26** (inclusive of the sums from TRUIST), leaving a loss of **$1,013,246.93**.

36.     On October 25, 2022, TRUIST concluded its 'investigation' with a written denial of Plaintiff's claim based upon a conclusion that "*no loss occurred.*"

37.     That same day, the undersigned sent a letter to Chris Mills, Market President of Truist Bank at 3522 Thomasville Road, Tallahassee, FL 32309, requesting "*1) a bank statement showing all the fraudulent wire transfers, and 2) complete detail from the bank on each ACH/wire transfer, especially but not limited to the maximum possible information about the recipient of each ACH/wire transfer.*"

38.     TRUIST did not provide any documents to Plaintiff's counsel or Plaintiff as a result of the undersigned's October 25, 2022 request.

*The Scheme To Defraud*

39.     FRAUDSTER(S) engaged in a scheme to defraud that involved stealing Plaintiff's confidential customer information, using it to gain access to Plaintiff's Account, and opening a Fake Account at the same bank to receive stolen funds.

40.     When TRUIST allowed FRAUDSTER(S) to open an account in the name of Finding Happy Daily, LLC, it was statutorily required to verify its customer's information in accordance with a proper Customer Identification Program pursuant to 31 C.F.R. § 1020.210, *et seq.*

41.     Following the customer verification process TRUIST obtained information exposing the FRAUDSTER(S) as Finding Happy Daily, LLC.

42.     TRUIST also knew that each and every one of the thirty-nine (39) atypical, unauthorized transactions were "suspicious" because TRUIST flagged them as such.

43.     TRUIST turned a blind eye to each and every one of the flags and continued to originate, process, and complete fraudulent transfers for

twenty-five (25) days without any actual notice to Plaintiff about the suspected fraudulent activity.

44.    When Plaintiff reported the fraud initiating claim #C202210201795, TRUIST knew that it had received some of the fraudulent transfers into the Fake Account as those transactions were shown on the list of "suspicious transactions" visible only to TRUIST.

45.    TRUIST failed to disclose this detail and other important information about the fraudulent transfers, withholding it for days despite Plaintiff's repeated request for a copy of the list of the suspicious transfers, thereby delaying mitigation efforts and investigations while giving FRAUDSTER(S) additional time to abscond with stolen funds.

46.    TRUIST also withheld Plaintiff's bank statement showing all the fraudulent wire transfers, and the complete detail from the bank on each ACH/wire transfer, especially but not limited to the maximum possible information about the recipient of each ACH/wire transfer as specifically requested by Plaintiff's counsel on October 25, 2022.

47.    In addition to the loss of the misappropriated funds, Plaintiff has lost interest on the money, the use of the money, and the use of its bank

accounts. Consequently, Plaintiff's business operations were disrupted while it was unable to pay vendors and make payroll.

48.    All conditions precedent to the filing of this action have occurred, been satisfied, or waived.

## COUNT I
### Negligence Against Truist

49.    Plaintiff restates the allegations in paragraphs 1-48 above as if fully set forth herein.

50.    Banks have a common law duty to act in good faith and use ordinary care in their dealings with their customers that includes diligence in providing financial services.

51.    The common law duty of reasonable care and diligence is imposed on banks to ensure that customers are protected from harm and that financial institutions operate in a safe and sound manner.

52.    TRUIST acted in bad faith and breached the common law duty of reasonable care and diligence owed to Plaintiff by:

      a. failing to follow standard account opening procedures in opening the FRAUDSTER(S) account;

b.  failing to adopt or otherwise follow established commercially reasonable security procedures and protocols;

c.  failing to prevent FRAUDSTER(S)' repeated use of stolen customer information to gain access to Plaintiff's Account no less than thirty-nine (39) times;

d.  failing to promptly notify Plaintiff when its Account was being used to contract a transaction with another TRUIST account that was not a real account and was not opened by Plaintiff;

e.  failing to consider the unusually large and frequent amounts of the transfers from FFCA's account in just a few days;

f.  failing to adequately and continually train, educate, and supervise TRUIST employees and personnel on security policies, practices, and procedures that were adopted internally and/or are customarily used in the banking industry, including but not limited to the prevention of opening phony accounts and processing fraudulent transfers, as well as the handling of customer reports of fraud;

g.  failing to properly monitor reports and systems that flag suspicious account activity;

h.  failing to take prompt action to stop withdrawals from the FRAUDSTER(s)' account after it was on notice of the wire fraud;

i.  failing to implement or otherwise comply with required procedures of a Customer Identification Program in accordance with federal law;

j.  failing to cooperate with Plaintiff and officials involved in investigations by actively concealing and/or delaying the sharing of critical information relative to a crime committed by another TRUIST customer; and

k.  failing to conduct a proper investigation after Plaintiff reported the fraud and concluding that *no loss occurred.*

53.  As a direct and proximate result of TRUIST'S bad faith and breaches of duty, Plaintiff has suffered and incurred damages that include but are not limited to: a) the loss of misappropriated funds; b) the loss of interest; c) the loss of use of all bank accounts; and d) a disruption of business

operations due to an inability to make payment to vendors, staff, and employees.

WHEREFORE, Plaintiff demands judgment against Defendant, TRUIST, for all damages incurred by Plaintiff, and for such other and further relief as the Court deems just and proper.

COUNT II
Refund Of Unauthorized And Ineffective Funds Transfer Against Truist

54.     Plaintiff restates the allegations in paragraphs 1–48 above as if fully set forth herein.

55.     TRUIST is obligated to make repayment for unauthorized or ineffective funds transfers pursuant to Article 4A of the UCC, codified in Florida Statutes Section 670.102, *et seq.*, and Federal Regulation J, Subpart B (to the extent that this Regulation preempts Chapter 670 of the Florida Statutes).

56.     Under U.C.C. § 4A-203(a)(2), TRUIST is not entitled to enforce or retain payment of the payment orders because the orders were not caused, directly or indirectly, by a person (i) entrusted at any time with duties to act for Plaintiff with respect to payment orders or the security procedure or (ii) who obtained access to transmitting facilities of Plaintiff or who obtained,

from a source controlled by Plaintiff and without authority of the receiving bank, information facilitating breach of the security procedure, regardless of how the information was obtained or whether Plaintiff was at fault.

57.    Plaintiff exercised ordinary care to discover the unauthorized ineffective funds transfers and made a timely report of suspected fraud to TRUIST less than thirty (30) days after initial unauthorized and ineffective funds transfer occurred.

58.    Since Plaintiff received no actual notice of the funds transfers from TRUIST and the statutory 90-day time limitation runs from the date of notice, a report made within thirty (30) days of the first occurrence of fraud is well within the statutory deadline.

59.    To date, TRUIST has repaid a total of $57,300.00 for the unauthorized and ineffective ACH wire transfer dated October 20, 2022.

60.    Plaintiff has otherwise failed and refused to make repayment for the remaining unauthorized and ineffective funds transfers.

61.    TRUIST has also failed and refuses to pay interest on the refundable amounts in accordance with Article 4A-204(a).

62.    As a direct and proximate result of TRUIST'S failure and refusal to make repayment in accordance with Article 4A of the U.C.C., codified in Florida Statutes Section 670.102, *et seq.*, and Federal Regulation J, Subpart B (to the extent that this Regulation preempts Chapter 670 of the Florida Statutes), Plaintiff suffered and incurred damages.

WHEREFORE, Plaintiff demands judgment against Defendant, TRUIST, for all damages incurred by Plaintiff, including interest, and for such other and further relief as the Court deems just and proper.

COUNT III
Aiding and Abetting Fraud

63.    Plaintiff restates the allegations in paragraphs 1– 48 above as if fully set forth herein.

64.    TRUIST had actual knowledge of the fraud committed by FRAUDSTER(S).

a. TRUIST must verify the identity of those who open an account and Finding Happy Daily, LLC does not exist; thus, TRUIST knew that a fraud was committed when FRAUDSTER(S) opened the Fake Account; and



b. TRUIST flagged each and every one of the thirty-nine (39) unauthorized transactions as "suspicious" in records visible only to TRUIST; therefore, TRUIST had actual knowledge of suspicious fraudulent activity on the Account from the date it flagged the first transaction; and

c. Plaintiff made a report of fraud to TRUIST and confirmed verbally and in a written affidavit that all of the transactions were fraudulent; so, TRUIST had actual knowledge of fraud from the moment the report was made.

65.    TRUIST provided substantial assistance to FRAUDSTER(S) that advanced the commission of the fraud.

a. TRUIST allowed FRAUDSTER(S) to open the Fake Account and use it to receive stolen funds;

b. TRUIST authorized and processed thirty-nine (39) fraudulent transfers over a period of twenty-five (25) days without actual notice to Plaintiff;

c. TRUIST ignored its own internal alerts and reports that flagged the first and all subsequent transactions as "suspicious";

d. TRUIST did not alert Plaintiff or the authorities about obvious fraudulent activity on the Account as shown in bank records visible only to TRUIST, turning a blind eye day after day for nearly a month as funds were stolen from Plaintiff's Account;

e. TRUIST accepted the payment orders in bad faith and in violation of security procedures;

f. TRUIST concluded that "no loss occurred" without conducting a good faith investigation;

g. TRUIST withheld information and otherwise failed to cooperate with Plaintiff and authorities in their efforts to investigate the crime and the criminals; and

h. TRUIST failed to provide documentation to Plaintiff's counsel responsive to his October 25, 2022 letter.

66. FRAUDSTER(S)' fraud and TRUIST'S substantial assistance has caused damage to Plaintiff in the amount of funds that FRAUDSTER(S) transferred out of the Account and misappropriated from Plaintiff.

WHEREFORE, Plaintiff demands judgment against Defendant, TRUIST, for all damages incurred by Plaintiff, including interest, attorney's



fees, costs, and for such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

### SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

WHEREFORE Plaintiff hereby provides notice to Defendant(s) and demands that Defendant(s), their affiliates, and all those working in concert with them safeguard all relevant evidence – paper, electronic documents, or data – pertaining to this litigation as required by law.

Dated this 8th day of August, 2023



CHILDERS LAW, LLC
2135 NW 40th Terrace, Suite B
Gainesville, Florida 32605
tel. 866-996-6104 fax 407-209-3870

*/s/ Seldon J. Childers*

Seldon J. Childers
Florida Bar No. 61112
jchilders@smartbizlaw.com
notice@smartbizlaw.com
*Counsel for Plaintiff*

